TARKINGTON v. NICHOLS et al. *
(No. 8150.)

(Court of Civil Appeals of Texas. Galveston. Feb. 21, 1922. Rehearing Denied March 16, 1922.)

1. **Brokers** ⬅86(1)—**Evidence held sufficient to support findings in favor of plaintiffs suing for commissions.**

In an action by brokers for commissions on a sale, in which defendant pleaded that he was of unsound mind when he made the agreement with the brokers and when he signed an earnest money receipt, evidence *held* sufficient to support a finding for plaintiff on this issue and also findings that the agreement with the brokers was made, that the contract with the purchasers was made, and that the purchasers were ready, willing, and able to purchase on the terms agreed.

2. **Trial** ⬅352(1)—**Special issues in action for commissions held to fairly cover issues made by evidence.**

In an action by brokers for commissions on a sale in which defendant answered by general denial and pleaded specially that he was of unsound mind, special issues in response to which the jury found that defendant made the agreement with the brokers, that he made an agreement to sell to the purchasers found by the brokers, that such purchasers were ready, willing, and able to purchase on the terms agreed on, and that defendant was of sound mind when he signed the earnest money receipt, and that it was his voluntary act and deed, *held* to fairly present the issues of fact made by the evidence.

Appeal from District Court, Fort Bend County; M. S. Munson, Judge.

Action by Roy B. Nichols and another against J. S. Tarkington. From judgment for plaintiffs, defendant appeals. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 3, 1922.

J. M. Gibson, of Houston, for appellant.

Kennerly, Lee & Hill, of Houston, for appellees.

LANE, J. This suit was brought by appellees, Roy B. Nichols and B. Melton, against appellant, J. S. Tarkington, to recover the sum of $1,009.53 alleged to be due them, as brokers, for their services in procuring for appellant purchasers for his farm situated in Fort Bend county, Tex.

The plaintiffs alleged, in substance, that on or about the 1st day of November, 1918, the defendant Tarkington orally contracted with B. Melton and Roy B. Nichols that if plaintiffs would find him a purchaser for his farm, consisting of $201^{19}/_{21}$ acres, so that he would receive the net sum of $100 per acre therefor, he would allow plaintiffs all sums paid by said purchaser over and above said $100 per acre as their commission; that thereafter, on or about the 5th day of November, 1918, Roy B. Nichols, as principal, and B. Melton, as his agent, found and procured purchasers for defendant's farm in the persons of Robert Fleming and Ned Perkins, who were able, willing, and ready to buy said farm from defendant at the price of $105 per acre; that said purchasers were presented to defendant, and defendant was informed that said proposed purchasers were able, willing, and ready to purchase his farm at the price of $105 per acre, and that defendant accepted said Fleming and Perkins as such purchasers, but for some reason unknown to plaintiffs defendant thereafter refused to convey said farm to said proposed purchasers, and still refuses so to do, and now refuses to pay plaintiffs the said sum of $1,009.53 as he is, by reason of the matters alleged, obligated to do. J. S. Tarkington answered denying generally the allegations of the plaintiffs. He specially averred that, if he ever agreed to sell and convey the title to his land as alleged by plaintiffs and to pay the commission alleged by them, such agreement was at a time when he was very ill and of unsound mind and not of disposing memory, and was incapacitated to make a binding contract, and that as soon as he recovered his reason and sound discretion he repudiated said agreement.

He further alleged, in substance, that at the time he executed the earnest money receipt, acknowledging receipt of certain earnest money from the proposed purchasers to bind the proposed sale and purchase, he was of unsound mind and incapable of knowing the nature of his act; that he was at such time temporarily insane, and that upon regaining his reason he repudiated said act as not being his voluntary act and deed; that appellees knew of his mental and physical condition, and that they fraudulently obtained his signature to said earnest money receipt agreeing to the sale of his property to Fleming and Perkins.

Appellee B. Melton testified that he was engaged in the sale of real estate with Roy B Nichols; that he saw appellant Tarkington about the first of October, 1918, and that Tarkington asked him if he could sell his (Tarkington's) farm for $125 per acre; that he told Tarkington he could not sell it for the price wanted; that about the middle of October Tarkington again saw him, and he told Tarkington that he could sell the farm for $100 per acre, and Tarkington then told him that if he (Melton) would sell the farm for $105 per acre he would pay him either $5 per acre or 5 per cent. commission; that he agreed to undertake to sell the farm at the price mentioned; that he then saw Ned Perkins and Robert Fleming and showed them the farm, and they agreed to purchase the same at $105 per acre, and that on the 5th day of November, 1918, he went to see Tarkington and told him that he had sold the farm, and Tarkington told him to get the earnest money and that he (Tarkington) would sign the earnest money receipt; that he then told Tarkington that the proposed purchasers would not put up the earnest money unless he (Tarkington) signed the earnest money receipt; Tarkington then said, "Well, fix it out"; that he (Melton) then had the following instrument prepared:

"Earnest Money.

"$2,000.00.    Rosenberg, Texas, Nov. 5, 1918.

"Received of Ned Perkins and Robt. Fleming the sum of two thousand ($2,000.00) dollars as part payment of purchase money on the following described property, to wit, all that certain tract or parcel of land described as lots number one and two of the subdivision of the Burton Plantation situation in Fort Bend county, Texas, being part of the Samuel Isaacs league, and known and described as lots numbered one and two as per plat book one page 24 et seq., to which reference is made to aid in this description, together with all improvements thereon, which property I have this day sold to Ned Perkins and Robt. Fleming, their heirs and assigns for the full sum of twenty-one thousand two hundred ($21,200.00) dollars, on the following terms, to wit, four thousand five hundred ($4,500.00) dollars cash, and the balance on the following terms, to wit: In five equal yearly payments with interest at the rate of (7%) seven per cent. per annum from date until said notes are paid in full; interest on said notes to be paid annually. Upon payment of cash part of purchase money ($21,200.00) including the amount herein receipted for, I agree to convey, or cause to be conveyed by good and sufficient warranty deed to the above-described property. It is hereby agreed that the vendors shall furnish a complete abstract to the above-described property. If the title to said property is not good, and cannot be made good within 30 days from this date, then the two thousand ($2,000) dollars herein receipted for shall be returned to the said Ned Perkins and Robt. Fleming, or their heirs and assigns. But if the title is good, and said property is not taken within 36 days from the

date hereof, then the two thousand dollars ($2,000) herein receipted for shall be forfeited to J. S. Tarkington and B. Melton and the vendor equally, as liquidated damages, and this receipt shall be null and void, and all parties herein named released. In the event title to said property is defective, 20 days shall be allowed to the vendor to perfect the same, and I bind myself to use my best efforts to perfect title to said property within that time."

That Perkins and Fleming each gave him their checks for $1,000, and that he took the checks and the earnest money receipt which he had prepared to Tarkington; that he gave the checks to Tarkington, who signed the earnest money receipt and gave it back to him; that he got the abstract of the land from Tarkington, and on the next morning he went to see Tarkington and asked him to have the abstract completed down to date of sale; that Tarkington then told him that he had decided that he did not want to sell the farm; that he then told Tarkington that he (Melton) had earned his commission and that if he did not pay it he would sue for same, and in reply Tarkington said, "Sue, and be damned."

The evidence shows that the proposed purchasers, Perkins and Fleming, were ready, willing, and able to buy the farm at $105 per acre upon the terms agreed upon, as shown by the earnest money receipt hereinbefore set out.

The witness Hillebrenner testified that he heard appellee tell Melton that he would take $100 per acre net for the land, and that if Melton would find a purchaser at $105 per acre he would allow him a commission of either $5 per acre or 5 per cent.

Appellee Nichols testified that, a few days after the earnest money receipt had been executed, he went to Richmond and saw appellant and asked him for the supplemental abstract; that—

Appellant said to him, " 'You will not get it.' I asked him, 'Why not?' He said, 'Because I am not going to make it'—was not going to make the deed. I asked him why he was not going to make the deed. He said, 'That is all I have got to say about it.' I was walking along by the side of him, and he said, 'I don't have any more to say about it.' That is all the satisfaction I could get. Mr. Tarkington did not convey the property to Perkins and Fleming—I did not get my commission. I did not get any part of it."

The evidence relative to the sanity of Tarkington at the time the agreement was made between him and Melton and at the time he executed the earnest money receipt largely preponderates in favor of his sanity and tends to show that he fully understood what he was doing when he made the agreement and signed the receipt.

The cause was tried before a jury, who, in answer to special issues submitted to them, found: (1) That J. S. Tarkington did on or about the 15th day of October and before November 5, 1918, agree with B. Melton to pay Melton $5 per acre commission if Melton would procure a purchaser or purchasers for his land at $105 per acre; (2) that Tarkington did on or about November, 1918, agree with B. Melton to convey his land to Ned Perkins and Robert Fleming for $105 per acre, $4,500 to be paid in cash and the balance in five equal yearly payments to be evidenced by notes bearing 7 per cent. interest per annum, interest payable annually, and did agree to pay Melton $5 per acre commission for procuring said purchasers; (3) that Ned Perkins and Robert Fleming, at the time of the proposed purchase, were ready, willing, and able to purchase said land on the terms agreed upon; (4) that J. S. Tarkington was on the day he signed the earnest money receipt in such mental condition as to be able to fully understand and comprehend the nature, force, and effect of his act in so signing said receipt; (5) that the act of Tarkington in signing the earnest money receipt was his voluntary act and deed, made with the full understanding of the nature thereof.

Upon these answers of the jury and upon the evidence the court rendered judgment in favor of appellees for the sum of $1,009.53, with interest thereon at the rate of 6 per cent. per annum from the 5th day of November, 1918. From this judgment so rendered J. S. Tarkington has appealed.

[1, 2] Appellant's contentions for reversal of the judgment are, substantially: First, that the court erred in rendering judgment for appellees, because it was incumbent on appellees to show that the parties procured as purchasers would have paid the agreed purchase price and accepted the land on the terms and conditions laid down by appellant, and there was no evidence showing that said proposed purchasers would have done so, therefore appellees were not entitled to a recovery; and, second, that the court erred in submitting special issues Nos. 1, 2, 4, 5, and 6 (which the jury answered in manner hereinbefore shown), because the same were not so framed as to fairly present the issues of fact as made by the evidence.

We have carefully examined the statement of facts and the charge of the court, as well as all the assignments of appellant, and after so doing we have reached the conclusion that there is no merit in any of the assignments, and that the answers of the jury to the issues submitted and the judgment of the court are supported by ample evidence. Having reached such conclusion, the judgment is affirmed.

Affirmed.